OPINION
Defendant-appellant, Scott Throckmorton, appeals the sentences imposed by the Clermont County Court of Common Pleas as part of his conviction for a number of violent crimes.
Appellant is a mentally retarded individual who suffers from a delusional psychosis with paranoid tendencies. Prior to the instant offenses, he worked with his victims at Bastin Group Home ("Bastin Home"), located at 3772 Bass Road, Williamsburg, Clermont County, Ohio, a group home for mentally ill and retarded individuals. Appellant was fired prior to the events that resulted in his convictions. Michael Sage, one of the victims, was a co-worker and a personal friend of appellant. The Sage family accepted appellant as a family friend, often having him over for dinner.
The night of January 7, 1999, appellant visited Michael's home at 296 South Fourth Street, Williamsburg, Clermont County, Ohio, to play video games. At about 1:00 a.m., appellant and Michael went to bed in separate rooms. At about 4:00 a.m., appellant entered Michael's room and tied Michael to the bedposts at gunpoint. Appellant was upset because he believed that Michael and other co-workers had abused him and set him up to be fired from Bastin Home. The resentment leading up to appellant's actions apparently had been building for more than a year.
In the two weeks prior to January 7, appellant prepared a number of audio tapes setting forth a plan to kill Michael and Kathy Johnson, another co-worker at Bastin Home. Appellant believed that Michael and Kathy were having an affair. Earlier in the day on January 7, appellant mailed copies of these tapes to his victims, his family, and other individuals. In these tapes, appellant put forth his reasons for wanting to kill Michael and Kathy.
After appellant had tied Michael to the bed, he interrogated Michael about alleged wrongs against appellant. At some point, appellant began to stab Michael. Appellant stabbed Michael more than thirty times, leaving four knives in Michael's body, including a sword which was shoved through Michael's torso.
Appellant took the keys to Michael's truck and drove to Bastin Home. Upon arriving at Bastin Home, appellant held several employees and residents at gunpoint, demanding that they bring Kathy, who was working at the time. Appellant fired a shot into the ceiling of the room. Appellant eventually released all of the employees and residents except for Kathy. After more than two and one-half hours of negotiations, the police talked appellant into an exchange. During the exchange, as appellant set aside his gun to grab certain objects, he was apprehended and Kathy was freed.
On March 29, 1999, appellant was charged by information with nine offenses. The information was later amended according to a plea agreement. Count one charged the aggravated murder of Michael in violation of R.C. 2903.01(A). Counts two and three charged the respective aggravated burglaries of Michael's home and Bastin Home in violation of R.C. 2911.11(A)(1), first degree felonies. Count four charged aggravated robbery based upon taking Michael's truck in violation of R.C. 2911.01(A)(1), a first degree felony. Count five charged the kidnapping of Michael in violation of R.C. 2905.01(A)(1), a felony of the first degree because Michael had not been released to safety unharmed. Counts six through eight charged the respective kidnappings of Kathy, Diana Lewis, and Tanya Daus, in violation of R.C. 2905.01(A)(1), second degree felonies because the women were released to safety unharmed. Count nine charged discharge of a firearm in a habitation in violation of R.C. 2923.161(A)(1), a second degree felony. Counts three and five through nine each included a R.C.2941.145(A) firearm specification.
On May 24, 1999, appellant entered guilty pleas to all counts. A sentencing hearing was held on July 15, 1999.[1] On July 21, 1999, the trial court filed its judgment entry of sentence. Appellant was ordered to serve a prison term of life, with parole eligibility after twenty years, for aggravated murder. Appellant was ordered to serve ten year prison terms as to counts two, three, and five, serve eight year prison terms as to counts four, six, and nine, and serve four year prison terms as to counts seven and eight. All sentences were ordered to be served consecutively. The firearm specifications in counts six, seven, eight, and nine were merged with the firearm specification in count three for sentencing purposes. Appellant was ordered to serve mandatory three year prison terms as to the count three and count five firearm specifications, to be served consecutive to one another, but prior to all other sentences. Appellant appeals, raising three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE IN FAILING TO SENTENCE HIM TO THE MINIMUM PRISON TERM AUTHORIZED FOR HIS OFFENSES, AND BY IMPOSING, INSTEAD, MAXIMUM CONSECUTIVE SENTENCES.
In his first assignment of error, appellant contends that the trial court erred by sentencing him to maximum prison terms as to counts two, three, five, six, and nine and consecutive prison terms as to all counts.[2] Appellant argues that the trial court's motivation in sentencing him was guided by personal opinion and not statutory criteria. Appellant urges that in light of his mental illness and his lack of a prior criminal history, lesser sentences should have been imposed.
Pursuant to R.C. 2953.08(G)(1), an appellate court may not disturb a sentence imposed under Senate Bill 2 unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law or statute. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v. Garcia (1998),126 Ohio App.3d 485, 487. The sentence imposed upon the offender should be consistent with the overriding purposes of felony sentencing: "to protect the public from future crime by the offender," and "to punish the offender." R.C. 2929.11(A).
Pursuant to R.C. 2929.14(A)(1), for first degree felonies such as aggravated burglary, aggravated robbery, and kidnapping, the trial court must impose a definite prison term of three, four, five, six, seven, eight, nine, or ten years. Pursuant to R.C.2929.14(A)(2), for second degree felonies such as kidnapping or discharge of a firearm, the trial court must impose a definite prison term of two, three, four, five, six, seven, or eight years.
If the offender has not served a previous prison term, the trial court must impose the minimum sentence, unless the trial court finds that to do so would "demean the seriousness of the offender's conduct" or "not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B). A trial court may impose the maximum term of imprisonment upon an offender only if the trial court finds on the record that the offender "committed the worst forms of the offense," or that the offender "pose[s] the greatest likelihood of committing future crimes." R.C. 2929.14(C). Garcia, 126 Ohio App.3d at 486-487. The trial court is not required to state the reasons underlying its findings when imposing more than a single maximum prison term.State v. Jodrey (Dec. 13, 1999), Clermont App. No. CA99-04-038, unreported, at 6, citing State v. Edmonson (1999), 86 Ohio St.3d 324,326;[3] compare Garcia, 126 Ohio App.3d at 487 (stated reasons are required when imposing a single maximum prison term for multiple offenses).
When reviewing the seriousness of an offender's conduct, the trial court is guided by R.C. 2929.12(B), which lists relevant factors to consider. Those factors include:
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
* * *
 (6) The offender's relationship with the victim facilitated the offense.
When reviewing whether an offender's conduct is less serious than that normally constituting the offense, the trial court is guided by R.C. 2929.12(C), which includes the following factor:
 (4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.
When reviewing whether the offender poses the greatest likelihood of recidivism, the trial court is guided by R.C.2929.12(D), which lists factors for the trial court's consideration, including:
 (5) The offender shows no genuine remorse for the offense.
R.C. 2929.12(E) sets forth factors for considering whether the offender poses less of a risk of recidivism. The factors include:
 (3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
Under R.C. 2929.12(B)-(E), the trial court may consider "any other relevant factors." Although the trial court need not specifically set forth how it weighed the above factors when determining the seriousness of the offender's conduct and the offender's likelihood of committing future offenses, the trial court is required to review these factors. R.C. 2929.13(A).
In the instant case, the trial court specifically stated at the sentencing hearing that appellant's conduct constituted the worst forms of the offenses. In making this determination, the trial court looked at the full extent of appellant's conduct throughout the morning of January 8, 1999. The trial court refused to view each charged offense in a vacuum, isolated from appellant's other actions. This was not error.
Appellant's entire course of conduct must be viewed in light of the intent expressed in his audiotaped statements that he intended to kill Michael and Kathy. He brutally murdered Michael and kidnapped Kathy, holding her hostage for two and one-half hours. Appellant used his relationship with Michael to gain access to Michael for purposes of his crimes. He stole Michael's truck so that he could travel to Bastin Home to kidnap and kill Kathy. Appellant held hostage, albeit for a short time, numerous other persons in his attempt to restrain Kathy. The trial court found that appellant's extensive premeditation displayed a lack of remorse, even though appellant contended otherwise at sentencing.
In mitigation of his conduct, appellant asserted that his actions were due to his mental illness. The trial court and the state both recognized this fact. However, it was made clear that should appellant confront a perceived rejection in the future, he could likely respond in a violent manner. Appellant's mental illness, when combined with his actions, demonstrated that he would likely commit violent offenses in the future. Although appellant was mentally ill, he was competent and he did know the difference between right and wrong. Thus, the fact that he had no prior criminal history was less important.
Appellant argues that the severity of his sentence was based upon the trial court's distrust of the parole board, and not his conduct. Although the trial court did state some concern whether the parole board could adequately apprise itself of the severity of appellant's conduct after twenty years or more, the record is clear that it was appellant's conduct itself which formed the basis of the court's decision to impose maximum sentences. Appellant committed the worst form of the offenses, and the seriousness of those offenses would be demeaned if he received less than maximum sentences. He presented a substantial likelihood of recidivism, and only maximum sentences would adequately protect the public from that future danger.
Pursuant to R.C. 2929.14(E)(4), a trial court may impose consecutive sentences only if it makes certain findings. First, the trial court must determine that consecutive sentences are "necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C.2929.14(E)(3); State v. Stevens (Sept. 21, 1998), Clinton App. No. CA98-01-001, unreported. Second, the trial court must find at least one factor listed in R.C. 2929.14(E)(4):
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
When imposing consecutive sentences upon an offender, the trial court is required to state the reasons for imposition of such sentences. R.C. 2929.19(B)(2)(c); Edmonson,86 Ohio St.3d at 326.
As noted above, the trial court specifically found that appellant's offenses were of the most serious type, and only maximum, consecutive sentences would adequately address the severity of appellant's offenses. Such sentences were required to adequately protect the public from future criminal conduct by appellant. The trial court went on to find that, in light of Michael's murder and the trauma caused to Kathy and the other hostages, no single prison term would adequately reflect the serious nature of appellant's conduct. As stated by the trial court, this was `the most horrible offense known to mankind * * *. [Michael] died in a horrible fashion, mutilation, tortuous [sic] death[.]"
The trial court provided the findings required to impose maximum, consecutive sentences. The first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE BY IMPOSING TWO CONSECUTIVE THREE YEAR SENTENCES FOR USE OF A FIREARM.
In his second assignment of error, appellant contends that the trial court should have sentenced him to only one firearm specification sentence. He argues that the firearm specifications all arose out of a single act or transaction.
This court previously addressed the issue of differentiating multiple firearms specifications, determining whether those specifications arose out of single course of action or multiple acts, in State v. Kehoe (May 17, 1999), Clinton App. No. CA98-02-006, unreported, discretionary appeal not allowed,86 Ohio St.3d 1492. In that case, this court held that an offender may be sentenced under multiple firearm specifications, pursuant to R.C.2929.14(A)(1)(a)(i), where each specification results from a separate act demonstrating separate animus or intended victims.Id., citing State v. Alaya (1996), 111 Ohio App.3d 627, 632, appeal dismissed, 75 Ohio St.3d 1508, cause dismissed, 76 Ohio St.3d 1418, and State v. White (1991), 71 Ohio App.3d 550, 555-556, caused dismissed, 61 Ohio St.3d 1434, writ of mandamus denied, State ex rel.White v. Goldsberg (1996), 76 Ohio St.3d 271.
In the instant case, the firearm specifications in counts three, six, seven, eight, and nine all arose out of appellant's burglary of the Bastin Home and taking personnel and residents hostage. The trial court merged these firearm specifications, because the acts underlying these specifications were part of a single course of action: appellant's entry and act of taking hostages at Bastin Home.
The trial court refused to merge the firearm specification in count five with the other firearm specifications. This specification arose out of appellant's act of kidnapping Michael, which was remote both in time and place from appellant's act of taking hostages at Bastin Home. The victim underlying the count five firearm specification was different from the victims underlying the other specifications. Appellant displayed a separate animus by kidnapping Michael. Appellant may have set out a single plan to commit crimes separated in time and place, but this fact will not, for purposes of the law and sentencing, necessarily make such separate offenses part of a single transaction.
The trial court did not err in refusing to merge the firearm specification in count five with the other firearm specifications. The second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE BY IMPOSING CONSECUTIVE SENTENCES FOR KIDNAPING AND AGGRAVATED MURDER.
In his final assignment of error, appellant contends that the aggravated murder and kidnapping charges regarding Michael should have been merged for sentencing purposes. He argues that these are allied offenses of similar import and that imposing a separate sentence for each offense violates double jeopardy and R.C. 2941.25, the multiple counts statute.
Allied offenses of similar import are governed by R.C. 2941.25, which provides:
 (A) Where the same conduct by the defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In State v. Ross (Oct. 25, 1999), Clermont App. No. CA99-01-004, unreported, discretionary appeal not allowed (2000), 88 Ohio St.3d 1427, this court fully discussed the changes in allied offenses analysis made by State v. Rance
(1999), 85 Ohio St.3d 632. In Rance, the Supreme Court of Ohio ruled that the elements of the alleged allied offenses are to be compared in the abstract, overruling prior cases and language to the contrary. 85 Ohio St.3d 632, paragraph one of the syllabus. Under Rance, when determining whether two or more offenses are allied offenses of similar import, the court
 should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other." (Citation omitted.) And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. R.C. 2941.25(B).
Id. at 638-639.
The Supreme Court of Ohio had previously stated that
 aggravated murder and kidnapping are not allied offenses of similar import under R.C. 2941.25. * * * A kidnapping can take place without aggravated murder, and an aggravated murder can take place without a kidnapping.
State v. Keenan (1998), 81 Ohio St.3d 133, 154 (citations omitted). A plain reading of the statutes defining the crimes shows that the result in Keenan holds under Rance. Aggravated murder is defined by R.C. 2903.01(A):
 No person shall purposefully, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy.
Kidnapping is defined by R.C. 2905.01(A):
 No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
To hold for ransom, or as a shield or hostage[.]
* * *
Clearly, kidnapping is missing the central element of aggravated murder: the death of another. One can commit a kidnapping by restraining another's liberty without purposefully and with prior calculation and design causing that other person's death. Likewise, one may purposefully and with prior calculation and design cause another's death without having ever restrained that person's liberty. State v. Hall (Aug. 3, 1994), Montgomery App. No. 13805, unreported (comparing elements in the abstract). The fact that a kidnapping and an aggravated murder are part of a single planned course of conduct is irrelevant when determining whether the crimes are allied offenses of similar import. UnderRance, the offender's subjective prior plan has no bearing on the statutory elements of the offenses.
The trial court properly imposed upon appellant separate sentences for the kidnapping and the aggravated murder of Michael. The third assignment of error is overruled.
Judgment affirmed.
 ____________________ Presiding Judge WALSH, J.
POWELL, P.J., and YOUNG, J., concur.
[1] We must recognize the professional manner in which the assistant prosecutor and appellant's counsel conducted themselves in this matter. Before this court and in the lower court counsel have displayed the greatest respect and civility towards one another and the courts. At a time when attorneys are often criticized for unprofessional conduct, counsel in the instant case have shown themselves worthy of commendation.
[2] The consecutive nature of appellant's firearm specification sentences are not relevant in this assignment of error, as any firearm specification must be served consecutively to and prior to any other sentence. R.C. 2929.14(E)(1).
[3] Edmonson concerned R.C. 2929.14(B), governing when a trial court may sentence an offender to a sentence greater than the minimum but less than the maximum allowable term of imprisonment. In that case, the Supreme Court held that R.C.2929.14(B) did not require a trial court to state the reasons underlying its findings supporting the sentence, Edmonson at syllabus, because "had the General Assembly intended the R.C.2929.14(B) findings to include reasons, it would have explicitly expressed that intent as it did in R.C. 2929.19(B)(2)." Id. at 326. Like R.C. 2929.14(B), R.C. 2929.14(C) does not include a requirement that the trial court state the reasons for its findings. Thus, the rationale underlying the Edmonson syllabus is applicable to R.C. 2929.14(C).